IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GLOBAL EXPEDITION VEHICLES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:15-cv-03296-MDH |
| | ) | |
| LOROAD, LLC, and | ) | |
| RODNEY LOUGH JR., | ) | |
| | ) | |
| Defendants/Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL VAN PELT and | ) | |
| RENE VAN PELT, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

## ORDER

Before the Court are cross motions for summary judgment, Plaintiff GXV and Third Party Defendants Mike Van Pelt and Rene Van Pelt's Motion for Summary Judgment (Doc. 111) and Defendants LoRoad and Rodney Lough's Motion for Summary Judgment. (Doc. 114). The parties have fully briefed the pending motions and they are now ripe for review.

## BACKGROUND

The dispute between the parties has a lengthy and contentious history, and the parties have previously litigated issues surrounding their disagreements. In June 2013, LoRoad filed a "Petition to Compel Arbitration Before Judicial Arbitration and Mediations Service." The June 2013 Petition, Case No. 6:13-cv-3246-SWH, alleged LoRoad and GXV entered into an

1

agreement for GXV to build a custom expedition vehicle and that a document entitled "Assembly Agreement" memorialized the parties' agreement. (Doc. 115-35). LoRoad's prior cause of action against GXV sought an order compelling GXV to arbitrate the dispute. LoRoad attached to its prior Petition a 5 page Assembly Agreement purported to be signed by LeeAnna Lough and Mike Van Pelt. (Doc. 115-35, pp. 9-13). GXV denied that a valid enforceable agreement to arbitrate existed. In the previous case, the Eighth Circuit affirmed the district court's summary judgment in favor of GXV, finding that "LoRoad failed to accept the Assembly Agreement signed by GXV; therefore, the court could not enforce the arbitration provision in that Agreement." *LoRoad, LLC v. Glob. Expedition Vehicles, LLC,* 787 F.3d 923, 925 (8th Cir. 2015). The Eighth Circuit found that the undisputed evidence showed no contract was formed between the parties. *Id.* at 929.

On the same day the Eighth Circuit issued its opinion in LoRoad's case, GXV filed the instant lawsuit asserting claims of Quantum Meruit; Restitution/Unjust Enrichment; Breach of Non-Disclosure Agreement; and Defamation/Slander/Libel/Injurious Falsehood against LoRoad and Lough arising out of the build of the custom expedition vehicle. Plaintiff subsequently amended its Complaint to add a claim for Violation of Missouri's Trade Secrets Act. Defendants filed a Counterclaim and Third Party Petition asserting claims of Fraudulent Misrepresentation; Negligent Misrepresentation; Unjust Enrichment and Assumpsit against GXV and its owners Michael and Rene Van Pelt.

2

The Court provides the following factual summary based on the "material facts" presented in the pending summary judgment motions in this case.[1] The parties together submitted approximately 138 "material facts."

GXV is a manufacturer of custom expedition vehicles. Mike Van Pelt is the sole owner of GXV and his wife, Rene Van Pelt, is an employee and representative of GXV. Lough is a professional photographer and LoRoad is a distributer of Lough's photography. Lough is not an engineer and has no engineering training.

In September 2012, Lough, on behalf of LoRoad, contacted GXV regarding the potential construction of a custom expedition vehicle that would be equipped with living quarters capable of hauling sufficient food, water and other supplies for weeks-long expeditions. Lough wanted a custom expedition vehicle to further his photography work in traveling to locations throughout the United States and North America, and also to use in conjunction with a mobile app to market his art. In addition, there were discussions that Lough wanted to use the vehicle in a pilot television reality show. The process of constructing a custom expedition vehicle (the "Build") requires customer input regarding features to be included based on what the customer wants for their specific vehicle. Construction of a custom expedition vehicle involves the purchase of a base vehicle, and then the construction of custom living quarters that are ultimately mounted on top of the base vehicle.

GXV required Lough to sign a non-disclosure agreement (the "NDA") prior to further discussions about the Build. The NDA was drafted by GXV and then signed by Lough on September 6, 2012. There is no recitation of consideration on the face of the agreement.

---

[1] The Court has taken the undisputed material facts from both parties' briefs. Where the parties do not agree the Court acknowledges the disagreement or has omitted the disputed fact from the background for purposes of the Court's summary judgment analysis.

Attachment A to the NDA states: "When disclosed orally, Proprietary Information must be reduced to tangible form, marked as indicated above, and then received by the Recipient party within 10 days after oral disclosure." An exception to the restriction on use and disclosure of Proprietary Information exists when the information "is in or comes into the public domain or the general knowledge of the RV/Expedition Camper/Vehicle industry otherwise than by a breach of this Agreement."

On or about September 19-20, 2012, Lough visited GXV in Nixa, Missouri to discuss the construction of a custom vehicle using a Unimog brand base vehicle. During that meeting, the base vehicle for Lough's Build was changed to a 6x6 BAE base vehicle. The parties dispute how the decision to change the base vehicle was ultimately reached. During this visit, and through the exchange of information concerning the Build, GXV alleges Lough acquired confidential and proprietary information that he would not have acquired otherwise. Lough and Mike Van Pelt had extensive conversations about mounts, wall thickness, and other items. There was also discussion about a reality television show. GXV previously had one of its builds featured on a reality show on the Travel Channel. Lough was interested in a reality show of his own and emailed Van Pelt on September 23, 2012, regarding his belief the Travel Channel might become interested in his show because of the Build. In late October, the parties had further discussions regarding the Build being featured on a show.

On September 29, 2012, GXV informed LoRoad it had located a BAE brand truck. GXV advertised that it used BAE vehicles for custom expedition vehicle builds. Mike Van Pelt informed LoRoad he had an opportunity to purchase a 2001 Caterpillar 6x6 with a C7 engine. The price of the vehicle was $110,000.00. The agreement between BAE and Mike Van Pelt for the purchase of the 6X6 BAE vehicle states "The vehicles are sold only for end use by

Purchase/End User as a used duty commercial truck for export outside the U.S." (Doc. 115-19; Section 1, ¶ (d)). Section 9(a) states:

> Purchaser understands and acknowledges that the Vehicles are not compliant with the Federal Motor Safety Standards and have not been certified as compliant with the emission standards and requirements promulgated by the Environmental Protection Agency pursuant to the Clean Air Act or regulations of the California Resources Board ("CARB"). The Vehicles may not be used in any jurisdiction in which such operation would violate the law. Any description in this Section or elsewhere in the order of any law, statute, or regulation is general in nature and does not modify or limit Purchaser/End User's contractual obligation to comply with the applicable law, statute or regulation.

*Id.* The parties dispute whether the base vehicle purchased by Mike Van Pelt could be legally operated in the United States. During the negotiations, LoRoad informed GXV it intended to register and title the Build in the State of Oregon. Lough informed GXV "I just want to be sure that there are no issues with title and registration in Oregon as I cannot afford to purchase this and then not be able to drive it around." GXV informed LoRoad the Build would be sold on a motor vehicle bill of sale.

On October 1, 2012, Rene Van Pelt sent Lough an initial draft of a document titled "Assembly Agreement." The Assembly Agreement called for a non-refundable deposit of $120,000.00. On October 18, 2012, Van Pelt sent an email to Lough stating that they were ok with adding television production language to the Assembly Agreement, but there was no guarantee regarding any such production. On October 31, 2012, GXV emailed Lough a revised version of the agreement. On November 2, 2012, LoRoad wire transferred $120,000.00 to GXV. On November 16, 2012, LoRoad faxed a version of the Assembly Agreement dated October 31, 2012 to GXV. In December 2012, the parties continued discussions about the Build.

On February 11, 2013, Lough sent an email to GXV inquiring about the final set of documents. Lough's email states:

5

did we ever get final documents signed / sealed / delivered?  Because I do not see where we finished creating the final set of documents.  Even though we deposited $120k into your account.  I have copies of all our correspondence to date, but do not find a final version expressing all the completed discussion points.  Have you created a final set incorporating everything we've come to agreement on?  If not, can you?  And, then get that to me for final review and then signatures so we can get this thing moving?  Thanks, Rodney

In response, on February 13, 2013, Van Pelt sent an e-mail to Lough stating that they had received a signed contract by Lee Anna Lough via fax on November 15, 2012.  GXV sent Lough a copy of the November 15, 2012 agreement.  Lough responded that LoRoad had not signed the Assembly Agreement.  Lough further stated a contract did not exist despite Lough's transfer of a $120,000 "good faith deposit" to "demonstrate our seriousness about moving forward on this project."  On February 15, 2013, Rene Van Pelt sent an e-mail to Lough setting forth her timeline of events and stating GXV received a signed contract via fax on November 15, 2012.  Defendants disputed, and still dispute, that a signed agreement was executed.[2]

On February 22, 2013, Rene Van Pelt sent an email to LoRoad with an attached Assembly Agreement Addendum for LoRoad's execution.  Lough responded on the same day disputing that the Assembly Agreement was a signed and executed document and that he would turn the disagreement over to the attorneys.  On March 5, 2013, LoRoad's attorney sent a letter to GXV stating the Assembly Agreement faxed on November 15, 2012, was not an executed contract.  The March 5, 2013, letter does not raise the issue of the Build's ability to operate legally in the U.S. or the potential for a television show.  On March 15, 2013, LoRoad's attorney sent a letter to GXV demanding assurance of performance by GXV of its obligations.  On March 16, 2013, Rene Van Pelt sent an email to LoRoad's attorney stating GXV believed they had an

---

[2] The Eighth Circuit held that LoRoad did not accept the Assembly Agreement signed by GXV and that a contract was not formed.  See *LoRoad, LLC v. Glob. Expedition Vehicles, LLC*, 787 F.3d 923, 929 (8th Cir. 2015).

6

executed contract with LoRoad.  Subsequent letters were exchanged regarding the parties' dispute over the existence of an executed contract and the terms of the parties' agreement.

Ultimately, on April 19, 2013, LoRoad terminated the agreement with GXV.  Defendants state their attorney's letter asserting their right of cancellation does not imply they believed a contract existed with GXV at that time.  The parties dispute Defendants' reasoning or basis for the cancellation of the Build.  For example, Plaintiff alleges the legality of operating the custom vehicle in the US was not the basis for cancelling the Build and that whether or not a reality television show was involved was not the basis for cancelling the Build.  Defendants do not admit these allegations.  However, Defendants admit they did not directly, or through their attorney, express any concern to GXV regarding the ability to legally drive the Build in the U.S. until after they terminated their agreement.  GXV has not returned any portion of the $120,000.00 LoRoad paid to GXV on November 2, 2012.

The parties agree that Lough made statements about GXV and the Van Pelts on the online forum expeditionportal.com.  Plaintiff contends Lough made statements that GXV and the Van Pelts are liars and thieves, and that they stole $120,000.00 from him.  Lough also made comments about the legality of the custom build and stated that the "truck at issue" "isn't legal" and that GXV never disclosed that to Lough.  Based on the record before the Court, Lough admits he made certain statements about GXV but claims any such statements were true.  Lough also denies Plaintiff's characterization of some of his statements.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317,

7

322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-49. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

I.    **PLAINTIFF AND THIRD PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, III, IV, and V OF DEFENDANTS' COUNTERCLAIM AND THIRD PARTY PETITION.**

Plaintiff and Third Party Defendants' Motion for Summary Judgment argues that LoRoad cannot establish the required elements for any of its claims of misrepresentation. Defendants' Counterclaim and Third Party Petition bring the following claims: Fraudulent Misrepresentation – Base Vehicle (Count I); Negligent Misrepresentation – Base Vehicle (Count II); Fraudulent Misrepresentation – Agreement (Count III); Negligent Misrepresentation – Agreement (Count IV); Fraudulent Misrepresentation – Television Shows (Count V); Unjust Enrichment (Count VI); and Assumpsit– Money Had and Received (Count VII). Plaintiff and the Third Party Defendants do not move for summary judgment on the claims of unjust enrichment or assumpsit.

8

The alleged misrepresentations set forth in LoRoad's Counterclaim and Third-Party Petition are based on the following allegations: 1) GXV's misrepresentations to LoRoad that the Custom Vehicle could be legally operated in the U.S.; 2) GXV's misrepresentations regarding the existence of an executed contract; and 3) GXV's misrepresentations regarding a television show requirement based on the Custom Vehicle.

### A.    Fraudulent Misrepresentation – Counts I, III and V.

To state a claim for fraudulent misrepresentation, plaintiff must prove (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Bohac v. Walsh,* 223 S.W.3d 858, 862-63 (Mo. App. 2007). "It is well-settled that an unkept promise does not constitute actionable fraud unless it is accompanied by a present intent not to perform..." *Urologic Surgeons, Inc. v. Bullock,* 117 S.W.3d 722, 726 (Mo. App. 2003) (internal citation omitted). Further, "statements, representations, or predictions about an independent third party's future acts do not constitute actionable misrepresentation." *Massie v. Colvin,* 373 S.W.3d 469, 472 (Mo. App. 2012).

### 1.  GXV's alleged misrepresentations to LoRoad that the Custom Vehicle could be legally operated in the U.S.

Count I claims GXV and the Van Pelts fraudulently misrepresented that the Custom Vehicle could be legally operated in the United States. LoRoad further alleges that but for the alleged misrepresentation it would not have transferred $120,000.00 to GXV. The motion for summary judgment argues GXV and the Van Pelts are entitled to summary judgment because even if the alleged misrepresentations were false, LoRoad cannot establish it was the proximate

cause of the alleged injury. GXV and the Van Pelts argue the parties' dispute, and the subsequent termination of the contract, did not involve the issue of whether the Custom Vehicle could be legally operated in the U.S. Specifically, they argue LoRoad would have incurred the same alleged loss, the eventual termination of the contract, because the contract was terminated over a disagreement regarding a signature on the Assembly Agreement regardless of whether the Custom Vehicle could be operated legally in the U.S.

Here, taking the undisputed facts in a light most favorable to LoRoad, the Court finds there is a factual dispute regarding the alleged claims of the legality of the Custom Vehicle and whether any alleged misrepresentations were the proximate cause of the alleged loss. The Court makes no determination regarding whether LoRoad can prove its claim for fraudulent misrepresentation based on this claim. However, the Court does find a factual dispute exists regarding what statements, if any, were made regarding the legality of the vehicle, and what effect, if any, those statements had on the parties' agreement that prevents summary judgment on this claim.

### 2. GXV's alleged misrepresentations regarding the existence of an executed contract.

Count III claims GXV and the Van Pelts fraudulently misrepresented that the Assembly Agreement was a binding contract and that LoRoad relied on that representation when it filed its Motion to Compel Arbitration. LoRoad claims it suffered attorneys' fees a result of the misrepresentation.

The record before the Court is clear that LoRoad, and the Loughs, never signed the proposed Assembly Agreement. If LoRoad never signed the agreement, then it could not rely on the representation of Plaintiff that there was an executed contract. An essential element of this claim is that LoRoad was ignorant of the falsity of the representation. As a result, if LoRoad

never signed the Assembly Agreement it cannot claim ignorance of whether there was an executed contract. LoRoad has always maintained that no one on behalf of the company signed or executed the Assembly Agreement. As a result, they cannot now claim that Plaintiff, or the Van Pelts, fraudulently misrepresented the existence of an executed contract.

Here, the Court finds LoRoad knew it had not signed or executed the Assembly Agreement and therefore Plaintiff could not have misrepresented whether the Assembly Agreement was executed. As a result, the Court grants summary judgment in favor of GXV and the Van Pelts on LoRoad's counterclaim and third party claim for negligent misrepresentation – Count III.

### 3. GXV's alleged misrepresentations regarding a television show requirement based on the Custom Vehicle.

Count V claims GXV and the Van Pelts fraudulently misrepresented that a television producer requested proof of LoRoad's commitment in the form of the $120,000.00 wire transfer. Again, the Court finds there is a factual dispute regarding what statements, if any, were made between the parties and what effect those statements had on the eventual deterioration of the parties' relationship. Plaintiff argues that GXV and the Van Pelts did not make any statements to Lough or LoRoad that they knew were false at the time they were made. Further, they argue any alleged statements regarding the television show are unrelated to the $120,000.00 and/or the cause of the contract's termination. However, a question of fact exists with regard to the alleged statements, and the intent behind any such statements. In evaluating the record before the Court, in a light most favorable to the non-moving party, there is enough evidence to create a genuine dispute of material fact with regard to the alleged statements made by GXV, and/or the Van Pelts, regarding the television show.

**B. Negligent Misrepresentation – Counts II and IV.**

The elements of a claim for negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's justified reliance on the information, the listener suffered a pecuniary loss. *Ryann Spencer Group Inc. v. Assurance Company of America,* 275 S.W.3d 284, 288 (Mo. App. 2008).

Simply put, to maintain a claim for negligent misrepresentation, plaintiff must establish that due to a failure to exercise reasonable care, defendants made false statements that plaintiff justifiably relied upon to his detriment. *Baum v. Helget Gas Products, Inc.,* 440 F.3d 1019, 1023 (8th Cir. 2006); *citing, Collins v. Mo. Bar Plan,* 157 S.W.3d 726, 734 (Mo. App. 2005). "A negligent misrepresentation claim cannot arise solely from evidence that the defendant did not perform according to a promise or statement of future intent." *Id.*

Defendants' claims for negligent misrepresentation are based on whether GXV and the Van Pelts made materially false statements about whether the Custom Vehicle could be legally operated in the U.S., and whether the Assembly Agreement was a signed/executed contract. Here, while the intent behind the alleged statements is analyzed under a different theory for Defendants' negligent misrepresentation claims as compared to the fraudulent misrepresentation claims, the underlying basis for the claims are based on the same allegations.

Therefore, for the reasons set forth herein, the Court finds the same factual dispute exists with regard to whether the vehicle could be legally operated in the U.S. and summary judgment is denied. The Court further finds, whether the Assembly Agreement was a signed or executed

12

contract, cannot be the basis for a claim for negligent misrepresentation and therefore the Court grants summary judgment on the negligent misrepresentation claim regarding the existence of an executed contract.

## II.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

Plaintiff's First Amended Complaint brings the following claims:  Count I – Quantum Meruit; Count II – Restitution/Unjust Enrichment; Count III – Breach of Non-Disclosure Agreement; Count IV – Defamation/Slander/Libel/Injurious Falsehood; and Count V – Violation of Missouri's Trade Secrets Act.   Defendants' motion for summary judgment moves for judgment on all counts, except the Missouri Trade Secrets Act claim, which was added after the pending summary judgment motion was filed.

### A.  Quantum Meruit – Count I.

"To recover under quantum meruit, the party bringing the claim must plead and prove: 1) that it provided materials or services to the defending party at the request of or with the acquiescence of the defending party; 2) that those materials or services had a certain reasonable value; and 3) that the defending party, despite demands of the party bringing the claim, has failed and refused to pay the reasonable value of those materials and labor." *Fowler v. Scott*, 164 S.W.3d 119, 120 (Mo. App. 2005).  "Quantum meruit is a remedy for enforcement of quasi-contractual obligations." *Id.*

GXV alleges "pursuant to LoRoad's direction, GXV provided services to LoRoad in the form of a purchase of a base vehicle, alteration of that base vehicle to conform to the order of LoRoad, and engineering/design work based on the Build List submitted by LoRoad."  First Amended Complaint ¶ 84.  GXV alleges the services provided and materials purchased had a reasonable value exceeding the $120,000.00 paid by LoRoad to GXV.

13

LoRoad argues it never received the base vehicle, or any engineering or design work from GXV. As a result, LoRoad argues it was not provided materials or services, and further, that it did not specifically request the vehicle that was purchased. LoRoad further argues in order to prevail on this claim, GXV must have made a demand for payment and that GXV never demanded payment from LoRoad for engineering or design work.

Here, while LoRoad argues there are undisputed material facts to support summary judgment, the record before the Court reflects the parties do not agree on what services or goods, if any, LoRoad received from GXV. To the contrary, the parties dispute most all the "facts" regarding this claim. Again, while the Court makes no determination regarding whether Plaintiff, or Defendants, will be able to substantiate their claims at trial, there are clearly undisputed material facts that prevent summary judgment on Plaintiff's claim for quantum meruit.

## B. Restitution/Unjust Enrichment – Count II.

"An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which the retention of the benefit, without paying its reasonable value, would be unjust." *S & J, Inc. v. McLoud & Co. LLC.,* 108 S.W.3d 765, 768 (Mo. App. 2003). A claim for unjust enrichment has three elements: 1) a benefit conferred by a plaintiff on a defendant; 2) the defendant's appreciation of the fact of the benefit; and 3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable. *Hertz Corp. v. RAKS Hospitality, Inc.,* 196 S.W.3d 536, 543 (Mo. App. 2006). Demonstrating unjust retention of the benefit is the most significant element of unjust enrichment and also the most difficult to establish. *Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.,* 280 S.W.3d 678, 697 (Mo. App. 2009). "Mere receipt of

benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Id.*

Plaintiff claims Defendants were enriched by receiving engineering and/or design work that was utilized in the construction and design of a custom expedition vehicle with another manufacturer. Plaintiff further alleges it incurred expense in providing the engineering and/or design work that LoRoad used in the construction of another vehicle and that it would be unjust for Defendants to retain that benefit without payment. Defendants deny they received engineering or design work product and deny that they received any benefit. Defendants move for summary judgment arguing they did not receive engineering or design work product and that Plaintiff cannot prove what alleged benefit was received. Here, again, there is a factual dispute regarding what, if anything, Plaintiff provided to Defendants during the course of their relationship. As a result, whether Plaintiff can provide evidence to support its claim is a factual issue for the jury and summary judgment is improper.

## C. Breach of Non-Disclosure Agreement – Count III.

For a breach of contract claim, Plaintiff must establish: "1) the existence and terms of a contract; 2) that plaintiff performed or tendered performance pursuant to the contract; 3) breach of the contract by the defendant; and 4) damages suffered by the plaintiff." *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (internal citation omitted). "The elements required to form a valid contract in Missouri are 'offer, acceptance, and bargained for consideration.'" *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo. App. 2011) (internal citation omitted).

Plaintiff alleges the parties entered into a valid non-disclosure agreement and that Lough agreed not to disclose, for a period of ten years, certain proprietary information. Plaintiff alleges

15

Lough obtained confidential and proprietary information through his visit and tour of GXV that he then used in the engineering and design of a custom expedition vehicle by another manufacturer. In response, Defendants argue that the non-disclosure agreement is unenforceable, that no proprietary information was disclosed and that GXV cannot prove damages.

First, Defendants argue there is no consideration for the contract and therefore it is unenforceable. Plaintiff contends its disclosure of confidential and proprietary information serves as the consideration for the contract, despite the fact that a consideration clause or money payment was not part of the NDA. This Court agrees that the disclosure of confidential and proprietary information serves as consideration for the NDA. *See McRentals, Inc. v. Barber*, 62 S.W.3d 684, 706 (Mo. App. 2001) ("A finding of consideration does not depend on 'the existence of a consideration clause or a money payment.' Under Missouri law, a detriment to the promisee or benefit to the promisor can constitute consideration sufficient to support a contract.") (internal citations omitted). Therefore, the Court finds the NDA is enforceable.

Further, the Court finds there is a factual dispute regarding what information, if any, Lough received from Plaintiff during the relationship and whether that information is covered by the NDA. Reviewing the record in a light most favorable to Plaintiff, Lough spent 3 days at GXV's facility gathering information about the Build. Further, Mike Van Pelt testified regarding what information he believed was disclosed and constitutes a breach of the NDA. Whether Plaintiff can provide evidence that confidential and proprietary information was in fact disclosed to Lough, and if so, whether any such information was then disclosed by Lough to others causing damage to Plaintiff is a question for the jury.

16

**D. Defamation/Slander/Libel/Injurious Falsehood – Count IV.**

To prevail on a claim of defamation, Plaintiff must prove: "1) publication; 2) of a defamatory statement; 3) that identifies the plaintiff; 4) that is false; 5) that is published with the requisite degree of fault; and 6) damages the plaintiff's reputation." *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 598–99 (Mo. 2013) (internal citation omitted).

Plaintiff alleges Defendant Lough made defamatory comments online regarding their relationship and dealings. Defendants argue any alleged statements are not defamatory, as a matter of law, because the statements are true. The statements at issue concern Defendants' alleged comments with regard to whether the vehicle could be legally operated in the U.S., whether Plaintiff "stole" money from Defendants, and whether Plaintiff lied to GXV. First, whether Lough, or LoRoad, made any comments regarding GXV or the Van Pelts is a disputed question of fact, and further, whether any of the alleged statements are true is also a question of fact. In addition, whether Plaintiff has suffered any actual damages caused by the alleged defamatory statements is also a question of fact. The record before the Court does not establish that summary judgment on this claim is proper. Whether Plaintiff can "produce any specific proof" to this claim, as argued by Defendants, will be determined when the evidence is presented to the jury at trial. Defendants state "truth is an absolute defense" to this claim, however, the truth of any alleged statements will be a factual issue for the jury to determine.

## CONCLUSION

Here, based on the extensive record before the Court, and the multiple filings of exhibits, statements of "fact" and other evidence, the Court finds both parties have provided enough evidence to create a question of material fact with regard to all of their claims, with the exception of the negligent and fraudulent misrepresentation claims based on whether there was an executed

contract.  Wherefore, for the reasons set forth herein, the Court **DENIES** Plaintiff and Third Party Defendants' Motion for Summary Judgment on Counts I, II, and V and **GRANTS** summary judgment on Counts III and IV.  The Court further **DENIES** Defendants' Motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

Date:  May 16, 2017

*/s/ Douglas Harpool*

**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**
